# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TODD M. HARPER and TANYA F. OTSUKA,

          *Plaintiffs*,

*v.*

SCOTT BESSENT, *et al.*,

          *Defendants*.

Civil Action No. 1:25-cv-01294-AHA

## REPLY IN SUPPORT OF DEFENDANTS'
## CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

I.    Congress did not restrict the President's authority to remove NCUA Board members at will. ..................................................................................................................3

II.   If there were restrictions on the removal of NCUA Board members, they would be unconstitutional. ......................................................................................................4

    A.    The *Humphrey's Executor* exception is narrow and applies only to multimember, expert agencies that do not wield substantial executive power..............5

    B.    Historical practice does not support the claimed NCUA removal protections. .........10

    C.    If this court finds removal restrictions, it should hold that those restrictions—not grants of executive authority to the NCUA—are unconstitutional. ........................................................................................11

III.  Plaintiffs are not entitled to the relief sought..........................................................14

    A.    This court may not reinstate plaintiffs to their former offices. ....................................14

    B.    Plaintiffs Are not entitled to a permanent injunction. ...................................................17

    C.    Plaintiffs are not entitled to a declaratory judgment that would amount to reinstatement. ..........................................................................................19

    D.    Plaintiffs are not entitled to a writ of mandamus. .........................................................20

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*13th Reg'l Corp. v. U.S. Dep't of Interior,*
  654 F.2d 758 (D.C. Cir. 1980) ........................................................................................21

*Alcresta Therapeutics, Inc. v. Azar,*
  318 F. Supp. 3d 321 (D.D.C. 2018) ...............................................................................18

*Barnes v. Kline,*
  759 F.2d 21 (D.C. Cir. 1984) .........................................................................................17

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
  591 U.S. 610 (2020) .......................................................................................................13

*Bessent v. Dellinger,*
  145 S. Ct. 515 (2025) .....................................................................................................16

*Church v. Biden,*
  573 F. Supp. 3d 118 (D.D.C. 2021) ...............................................................................18

*City of Arlington v. FCC,*
  569 U.S. 290 (2013) ..........................................................................................................7

*\* Collins v. Yellen,*
  594 U.S. 220 (2021) .........................................................................................1, 8, 10, 13

*Dellinger v. Bessent,*
  2025 WL 887518 (D.C. Cir. Mar. 10, 2025) .................................................................19

*Ex parte Hennen,*
  38 U.S. (13 Pet.) 230 (1839) ....................................................................................11, 20

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ...................................................................................................*passim*

*FTC v. Kochava Inc.,*
  No. 2:22-cv-00377-BLW, 2023 WL 3249809 (D. Idaho May 4, 2023) ........................12

*FTC v. Walmart Inc.,*
  664 F. Supp. 3d 808 (N.D. Ill. 2023) ........................................................................12, 13

*Goodluck v. Biden,*
  104 F.4th 920 (D.C. Cir. 2024), *reh'g en banc denied,* 2024 WL 4092894
  (D.C. Cir. Sept. 3, 2024) ................................................................................................16

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999) ...........................................................................................16

*Harris v. Bessent*,
    2025 WL 980278 (D.C. Cir. Mar. 28, 2025) ........................................... 19, 20

*Harris v. Bessent*,
    2025 WL 1021435 (D.C. Cir. Apr. 7, 2025)............................................ 14, 19

* *Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) .....................................................................................*passim*

*LeBlanc v. United States Privacy and Civil Liberties Oversight Board*,
    Case No. 1:25-cv-542-RBW (D.D.C. May 21, 2025) ...........................................5

*Kalbfus v. Siddons*,
    42 App. D.C. 310 (D.C. Cir. 1914) ............................................................20

*Manning v. Caldwell for City of Roanoke*,
    930 F.3d 264 (4th Cir. 2019) ........................................................................4

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ................................................................ 20, 21

*Marsh v. Chambers*,
    463 U.S. 783 (1983) ....................................................................................17

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
    785 F.3d 684 (D.C. Cir. 2015) ....................................................................20

*Morrison v. Olson*,
    487 U.S. 654 (1988) ......................................................................................1

*Myers v. United States*,
    272 U.S. 52 (1926) ................................................................................. 4, 16

*Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*,
    216 F.3d 1180 (D.C. Cir. 2000) ...................................................................4

*Parsons v. United States*,
    167 U.S. 324 (1897) ......................................................................................4

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
    881 F.3d 75 (D.C. Cir. 2018) ................................................................ 10, 11

*Raines v. Byrd*,
    521 U.S. 811 (1997) ....................................................................................17

*Regan v. Time, Inc.,*
    468 U.S. 641 (1984) .................................................................................................13

*Sampson v. Murray,*
    415 U.S. 61 (1974) ......................................................................................... 15, 17

*Samuels v. Mackell,*
    401 U.S. 66 (1971) .................................................................................................20

\* *Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020) ........................................................................................*passim*

\* *Severino v. Biden,*
    71 F.4th 1038 (D.C. Cir. 2023) .....................................................................*passim*

*Swan v. Clinton,*
    100 F.3d 973 (D.C. Cir. 1996) .......................................................4, 14, 15, 21

*Trump v. United States,*
    603 U.S. 593 (2024) ......................................................................................... 8, 19

\* *Trump v. Wilcox,*
    --- S. Ct. ---, 2025 WL 1464804 (U.S. May 22, 2025) ...........................3, 14, 17, 18

*United States v. Arthrex, Inc.,*
    594 U.S. 1 (2021) ..................................................................................................2

*Utah Republican Party v. Cox,*
    892 F.3d 1066 (10th Cir. 2018) ............................................................................4

*Vitarelli v. Seaton,*
    359 U.S. 535 (1959) .............................................................................................15

*White v. Berry,*
    171 U.S. 366 (1898) ...................................................................................... 15, 19

*Whole Woman's Health v. Jackson,*
    595 U.S. 30 (2021) ...............................................................................................16

**Constitional Provisions**

U.S. Const. art. II, § 1, cl. 1 .......................................................................................... 2, 7

U.S. Const. art. II, § 3 ....................................................................................................2

**Statutes**

12 U.S.C. § 1752a ..................................................................................................... 1, 3

12 U.S.C. § 1766......................................................................................................................6

12 U.S.C. § 1782......................................................................................................................6

12 U.S.C. § 1786......................................................................................................................6

Magnuson-Moss Warranty—Federal Trade Commission Improvement Act,
   Pub. L. No. 93-637, 88 Stat. 2183 (1975)..............................................................................7

Wheeler-Lea Act,
   Pub. L. No. 75-447, 52 Stat. 111 (1938)................................................................................7

**Regulations**

12 C.F.R. § 747.703..................................................................................................................6

**Other Authorities**

Letter from James Madison to Thomas Jefferson (June 30, 1789),
   16 Documentary History of the First Federal Congress 893 (2004) ..................................10

National Credit Union Administration, *Newsroom: NCUA Releases Staff Message on the Current NCUA
Board* (Apr. 18, 2025),
   https://ncua.gov/newsroom/press-release/2025/ncua-releases-staff-message-current-
   ncua-board.............................................................................................................................18

The Federalist No. 70 (A. Hamilton) (J. Cooke ed. 1961) ......................................................19

## INTRODUCTION

Plaintiffs' Complaint rests on two mistaken assumptions: first, that despite including no such language, Congress must have intended to insulate National Credit Union Administration ("NCUA") Board members from at-will removal; and second, that the NCUA resembles the 1935 Federal Trade Commission at issue in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Plaintiffs are wrong on both points, and the Court should enter judgment for Defendants.

First, as explained in Defendants' opening brief, Congress did not include any removal restriction in the text of the NCUA organic statute. *See Collins v. Yellen*, 594 U.S. 220, 249 (2021) (citing 12 U.S.C. § 1752a). Although the predecessor of that statute specified that the then-single head of the NCUA served at the pleasure of the President, Congress's omission of that language in the current version of the statute—which completely restructured the NCUA and created the Board—does not indicate Congress's intent to protect Board members from at-will removal. If Congress wanted to limit the president's removal power, it would have had to be crystal clear. *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023). Silence is not enough. *See id.*

Second, Plaintiffs fail to grapple meaningfully with the Supreme Court's authoritative and recent pronouncements that there are only two exceptions to the general rule of unrestricted removal: for inferior officers with limited authority, as set forth in *Morrison v. Olson*, 487 U.S. 654 (1988); and for bipartisan, multimember bodies that do not exercise substantial executive power, as set forth in *Humphrey's Executor*. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020). Plaintiffs do not (and cannot) dispute that NCUA Board members are principal executive officers who prosecute, regulate, and investigate a broad swath of the American economy pursuant to the Federal Credit Union Act. Whatever may have been true of the Federal Trade Commission ("FTC") in 1935, the NCUA exercises substantial executive power today. The exception announced in *Humphrey's Executor* therefore does not apply to the NCUA.

1

Unable to dispute that the NCUA exercises substantial executive power, Plaintiffs argue that the nature of an official's duties and authority is irrelevant to whether the *Humphrey's Executor* exception applies so long as that official is part of a balanced, multi-member body. This rule contravenes constitutional text and principles requiring that all officials exercising executive power be accountable to the President because the Constitution vests the "'executive Power'—all of it"—in him alone. *Seila Law*, 591 U.S. at 203 (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). This ensures that executive authority retains "its legitimacy and accountability to the public through 'a clear and effective chain of command' down from the President, on whom all the people vote." *United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021) (citation omitted). Because any removal protections for NCUA Board members would break that chain, they would be unconstitutional.

Plaintiffs also misread the governing precedents. *Humphrey's Executor* held that the President's removal power "depend[s] upon the character of the office." 295 U.S. at 631. And in *Seila Law*, the Supreme Court held that the removal exception announced in *Humphrey's Executor* applies only to certain multi-member boards that do not wield substantial executive power. *Seila Law,* 591 U.S. at 218. The nature of an agency's power is thus the critical question for the application of the *Humphrey's Executor* exception. Whatever may have been true about the "quasi-legislative . . . , quasi-judicial" FTC of 1935, *id.* at 216 (quoting *Humphrey's Executor*, 295 U.S. at 628), the NCUA of 2025 indisputably wields substantial executive power. Plaintiffs cannot reasonably contend otherwise. *Humphrey's Executor* therefore does not apply to the NCUA.

In all events, this Court should not take the extraordinary step of effectively ordering Plaintiffs reinstated. Plaintiffs identify no authority from before this year in which a federal court in this Circuit used its equitable power to compel the reinstatement of principal officers, and the Supreme Court just yesterday granted the government's application to stay two such reinstatement orders, reasoning that "the Government faces greater risk of harm from an order allowing a removed officer to continue

2

exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, --- S. Ct. ---, 2025 WL 1464804, at *1 (U.S. May 22, 2025). The extraordinary remedy proposed by Plaintiffs would thus not only exceed this Court's Article III power, but would also severely intrude upon the President's Article II prerogatives. The proper remedy for an (allegedly) unlawful termination of a federal officer is backpay, not forcing the President to work alongside subordinates in whom he lacks trust. Likewise, neither a declaratory judgment that effectively reinstates Plaintiffs in their former offices nor a writ of mandamus to that effect is available.

## ARGUMENT

### I.    Congress did not restrict the President's authority to remove NCUA Board members at will.

As explained in Defendants' opening brief, there are no removal restrictions on NCUA Board members because the text of the statute is silent on the issue of removal restrictions. Defs.' Mem. of Law in Opp'n to Pls.' Mot. for a Prelim. Inj. and Summ. J. ("Mem. of Law") at 6–7, ECF No. 11-1 (citing 12 U.S.C. § 1752a). Still, Plaintiffs insist that Congress must have wanted to insulate NCUA Board members from at-will removal because the previous statute specified that the then-single head of the NCUA served at the pleasure of the president. And when Congress created the Board in 1978, it provided that Board members would serve fixed terms and omitted the reference to serving at the pleasure of the president. As explained above and in Defendant's opening brief, Congress completely restructured the NCUA in 1978. Mem. of Law at 8. Accordingly, the new statute's failure to specify that Board members serve at the pleasure of the President does not mean that one can infer an intent to impose removal restrictions as if Congress had line-item removed the provision from the statute. *Id.*

Further, contrary to Plaintiffs' assertion, Defendants' position does not require the Court to read into the statute an omitted term. Reply in Supp. of Pls.' Mot. for Prelim. Inj. ("Pls.' Reply") at 2, ECF No. 13. Rather, given "the background presumption that the President may remove anyone he appoints," the Court may not infer removal restrictions unless Congress's intent to impose those restrictions is "clear in [the] statute," *Severino*, 71 F.4th at 1044. Neither the omitted language nor the

term limits make Congress's intent to impose removal restrictions clear.  And even though the D.C. Circuit assumed in *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) that the terms limits protected Board members during their terms, *see* Pls.' Reply at 3, that Circuit has since made clear that "[w]hen used in federal appointment statutes, the word 'term' has a long-settled meaning of limiting a person's tenure in office, not investing the person with a guaranteed minimum period of service."  *Severino*, 71 F.4th at 1045; *see also Parsons v. United States*, 167 U.S. 324, 327–28 (1897) (holding that a fixed statutory term of service does not affect the President's presumptive removal power).

Moreover, Plaintiffs dismiss as mere "dictum" the Supreme Court's recent and on-point observation that Congress did not protect NCUA Board members from at-will removal.  Pls.' Reply at 4.  But even if it were dictum, as Plaintiffs insist, lower courts would not be free to ignore it.  *See Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 216 F.3d 1180, 1189 (D.C. Cir. 2000) ("[c]arefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative" (citation omitted)); *see also Utah Republican Party v. Cox*, 892 F.3d 1066, 1079 (10th Cir. 2018) ("We are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." (citation omitted)); *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 281–82 (4th Cir. 2019) ("[W]e routinely afford substantial, if not controlling deference to dicta from the Supreme Court.  Respect for the rule of law demands nothing less[.]" (internal citation omitted)).

## II.     If there were restrictions on the removal of NCUA Board members, they would be unconstitutional.

As the Supreme Court's recent decisions make clear, any analysis of a restriction on the President's removal authority must proceed from the "general rule" that the President possesses "unrestricted" "'authority to remove those who assist him in carrying out his duties.'"  *Seila Law*, 591 U.S. at 215 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513-14 (2010)); *see also id.* at 228 ("[T]ext, first principles, the First Congress's decision in 1789, *Myers* [*v. United States*, 272 U.S. 52 (1926)], and *Free Enterprise Fund* all establish that the President's removal power is the rule, not the exception.").  There are "only two exceptions to the President's unrestricted removal power": for

inferior officers with limited authority (the *Morrison* exception) and for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power" (the *Humphrey's Executor* exception). *Id.* at 204, 216. Plaintiffs do not (and cannot) dispute that NCUA Board members are principal officers, so the *Morrison* exception does not apply. Plaintiffs similarly cannot seriously dispute that NCUA Board members exercise substantial executive power. *See* Mem. of Law at 11–15. That should end the matter. Plaintiffs nonetheless ask this Court to sanction their exercise of substantial executive power insulated from removal by the President—and thus from accountability to the American people. As explained further below, Plaintiffs' arguments fail.[1]

### A. The *Humphrey's Executor* exception is narrow and applies only to multimember, expert agencies that do not wield substantial executive power.

**1.** Plaintiffs first argue (Pls.' Reply at 11) that Congress designed the NCUA Board to parrot the structure of the FTC as it existed in 1935. But as Defendants explained in their opening brief, Mem. of Law at 11–15, *Humphrey's Executor* recognized a limited "exception" to the rule of at-will removal of principal officers for a Commissioner of the 1935 FTC as "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216–17. Critically, each of these elements must be present for the exception to be applicable: the Supreme Court did not hold that *every* multimember

---

[1] It is also worth pointing out that recent ruling in *LeBlanc v. United States Privacy and Civil Liberties Oversight Board*, Case No. 1:25-cv-542-RBW (D.D.C. May 21, 2025) does not help Plaintiffs' position. *See id.* ECF No. 24 (memorandum opinion). The government respectfully disagrees with Judge Walton's ruling and intends to appeal and move to stay his ruling. In any event, Judge Walton's analysis does not support Plaintiffs here. Judge Walton concluded that the "plain text" of a statute restricts the President's removal authority only if "there is a 'specific provision' expressly restricting removal," ECF No. 24 at 24 (citing *Severino*, 71 F.4th at 1047). No such provision exists for the NCUA. Although the Privacy and Civil Liberties Oversight Board ("PCLOB") similarly lacks an express removal provision, *see id.* at 25–29, Judge Walton nonetheless concluded that the PCLOB's "structure and function clearly indicates Congress's intent to protect its members from removal, at least without cause." *Id.* at 38. For the reasons explained herein, that is not the case for the NCUA.

body of experts or bipartisan agency could be insulated from presidential control irrespective of the agency's functions and authority. Thus, *Humphrey's Executor* means exactly what it said—removal protections are constitutionally tolerable only for a multimember board that "exercises no part of the executive power vested by the Constitution in the President." 295 U.S. at 628.

That does not describe the NCUA. *See* Mem. of Law at 11–15. Unlike the 1935 FTC described by the Supreme Court, the NCUA exercises significant executive power. As established in Defendants' opening brief, the NCUA investigates potential unsafe practices and violations of the Federal Credit Union Act and related regulations. *See* 12 U.S.C. §§ 1766, 1782, 1786; 12 C.F.R. § 747.703(b). It serves offending parties notice of the charges against them and prosecutes the violations or unsafe practices specified in the notice. *See* 12 U.S.C. §§ 1786(b), (e) (authorizing the NCUA Board to initiate administrative proceedings against insured credit unions and institution-affiliated parties that engage in unsafe practices or violations of applicable law). The Board also exercises the executive power to "unilaterally issue final decisions awarding . . . relief in administrative adjudications." *Seila Law*, 591 U.S. at 219; *see, e.g.*, 12 U.S.C. § 1786(s)(B); *see also id.* §§ 1786(f), (k); *id.* § 1786(a); *id.* § 1766 (authorizing the Board to place failing credit unions in involuntary liquidation). And the Board's "enforcement authority includes the power to seek daunting monetary penalties against [credit unions and] private parties in federal court on behalf of the United States"—another "quintessentially executive power not considered in *Humphrey's Executor*." *Seila Law*, 591 U.S. at 219. Finally, the NCUA Board wields the power to prescribe "rules and regulations for the administration of [the Federal Credit Union Act]." 12 U.S.C. § 1766(a). For the reasons explained in Defendant's opening brief, those examples are quintessential exercises of executive power.

Plaintiffs say that Defendants "never contest that the agency's function are quasi-legislative and quasi-judicial," (Pls.' Reply at 8), but Defendants' opening brief made clear that the activities of the NCUA may "take 'legislative' and 'judicial' forms, but they are exercises of—indeed, under our

constitutional structure they *must be* exercises of—the 'executive Power.'" Mem. of Law at 15 (quoting *City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013) (quoting U.S. Const. art. II, § 1, cl. 1))). Further, the NCUA does not perform the sorts of activities the *Humphrey's Executor* Court identified as quasi-legislative and quasi-judicial, like writing reports for Congress or serving as a master in chancery to recommend dispositions to Article III courts. *Humphrey's Executor*, 295 U.S. at 628.

Plaintiffs also imply that the FTC possessed similarly expansive executive powers in 1935 when the Supreme Court decided *Humprey's Executor*. Pls.' Reply at 13. On the contrary, the NCUA possesses much greater authority than the 1935 FTC, which lacked many of the powers the FTC exercises today. First, the 1935 FTC did not have any consumer-protection authority at all (that is, its power to regulate unfair or deceptive practices) in 1935; it acquired that authority for the first time in 1938. *See* Wheeler-Lea Act, Pub. L. No. 75-447, 52 Stat. 111, 111–12 (1938). Second, the Commission did not have the ability to seek monetary penalties under Section 5 of the FTC Act against private parties, as the NCUA does under 12 U.S.C. § 1786(k), when the Court decided *Humphrey's Executor*. *See* Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub. L. No. 93-637, 88 Stat. 2183 (1975) (conferring authority under Section 5(m) of the FTC Act for the Commission to obtain civil penalties from entities that violate "any rule under this act respecting unfair or deceptive acts or practices"). *Seila Law* even characterized this "power to seek daunting monetary penalties against private parties in federal court" as "a quintessentially executive power not considered in *Humphrey's Executor*." *Seila Law*, 591 U.S. at 219. And to the extent Plaintiffs identify powers the FTC did have in 1935 but that the Court did not consider as a basis for its decision, that is beside the point. Pls.' Reply at 13. "[W]hat matters is the set of powers the [*Humphrey's Executor*] Court considered as the basis for its decision, not any latent powers the agency may have had not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n.4.

Accordingly, the NCUA exercises substantial executive power that the Supreme Court did not—indeed, could not—consider in *Humphrey's Executor*. To ensure that the officials exercising that power remain accountable to the President and the American people, NCUA Board members must be removable by the President at will under *Humphrey's Executor* as applied in *Seila Law* and *Collins*.

**2.** Plaintiffs respond (Pls.' Reply at 12) that *Seila Law* "reiterated the propriety of imposing removal restrictions on multi-member agencies like the one in *Humprey's Executor*—precedent that *Seila Law* did 'not revisit[.]'" (citation omitted). Not so. While *Seila Law* did not overrule *Humphrey's Executor*, it made clear that the scope of that case's exception to the general rule of presidential removal authority is a narrow one. Indeed, Plaintiffs offer no explanation for why the Supreme Court in *Seila Law* carefully cabined its summary of *Humphrey's Executor*'s holding to the "1935 FTC" and the "New Deal-era FTC," *Seila Law*, 591 U.S. at 218, or why it noted that the 1935 FTC was "*said* not to exercise any executive power" in *Humphrey's Executor, id.* at 216 (emphasis added), or that, "[r]ightly or wrongly, the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power,'" *id.* at 215 (citation omitted). The Court went out of its way to avoid confirming whether the Supreme Court even correctly understood the FTC in 1935, much less that the exception would apply to the NCUA or even continue to apply to today's FTC. *See also Collins*, 594 U.S. at 287–88 (Sotomayor, J., concurring in part and dissenting in part) (contrasting FHFA with the "1935 FTC").

**3.** To sustain their overbroad reading of *Humphrey's Executor*, Plaintiffs misread *Seila Law* and *Collins* (Pls.' Reply at 12) as standing only for the limited proposition that agencies cannot be led by a single director insulated from presidential control. To do so, Plaintiffs disclaim the relevance of the executive power exercised by the insulated official. This argument flouts the very constitutional principles from which the President's "conclusive and preclusive" removal authority is derived, *Trump v. United States*, 603 U.S. 593, 608–09 (2024). The President possesses that removal authority precisely because he must remain accountable to the American people for the exercise of *executive* power, *Free*

8

*Enterprise Fund*, 561 U.S. at 514.  The starting point in every assessment of the constitutionality of an executive official's removal protections is therefore whether that official exercises executive power.

Plaintiffs' position also defies unambiguous Supreme Court precedent.  Take *Humphrey's Executor* itself.  The Supreme Court there made clear that the availability of that exception "will depend upon the character of the office" because the President's Article II removal authority does not extend to an officer "who exercises no part of the executive power vested by the Constitution in the President."  *Humphrey's Executor*, 295 U.S. at 628, 631.  And it expressly "limited its holding to 'officers of the kind here under consideration.'"  *Seila Law*, 591 U.S. at 215 (quoting *Humphrey's Executor*, 295 U.S. at 632).  The nature of the FTC's power was therefore the ground on which the *Humphrey's Executor* exception rested.  *Seila Law*, 591 U.S. at 215 ("In reaching that conclusion, the [*Humphrey's Executor*] Court stressed that Congress's ability to impose such removal restrictions 'will depend upon the character of the office.'" (quoting *Humphrey's Executor*, 295 U.S. at 631)).

*Seila Law* brought this point into even sharper focus.  There, the Court held that the *Humphrey's Executor* exception applies *only* to "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power."  *Seila Law*, 591 U.S. at 216.  To be eligible for the *Humphrey's Executor* exception, then, an agency must satisfy four independent requirements: (1) it must be a multimember body of experts; (2) it must be balanced along partisan lines; and (3) it must perform legislative and judicial functions; and (4) it must not exercise executive power.  *Id.*; *see also id.* at 218 (describing the *Humphrey's Executor* exception as limited to "multimember expert agencies that do not wield substantial executive power").  If an agency is a multimember body of experts balanced along partisan lines, but it wields executive authority, then Congress may not constitutionally insulate it from the President's plenary removal authority. *Id.* at 216–18.

9

*Collins* reiterated this point.  It held that the FHFA "clearly exercises executive power" in response to the argument "that Congress may restrict the removal of the FHFA Director because . . . the Agency . . . does not wield executive power." *Collins*, 594 U.S. at 253–54; *see also id.* at 273 (Kagan, J., concurring) ("If an agency did not exercise 'significant executive power,' the constitutionality of the removal restriction would remain an open question.").  Accordingly, Plaintiffs are wrong (Pls.' Reply at 12) that even multimember agencies that wield substantial executive power are insulated from at-will removal, and their reliance on out of circuit, nonbinding caselaw is misplaced.

### B. Historical practice does not support the claimed NCUA removal protections.

Plaintiffs also argue (Pls.' Reply at 12, 15–16) that historical practice supports the constitutionality of the claimed NCUA removal protections.  But the Supreme Court itself considered relevant, historical practice and held unambiguously that only two exceptions to the President's Article II removal authority exist—one for certain inferior officers, and another for multimember, partisan-balanced bodies of experts that do not wield any executive power.  *Seila Law*, 591 U.S. at 216.  And in any event, Plaintiffs' appeal to the historical record would not salvage any NCUA removal protections.

As demonstrated by both *Humphrey's Executor* itself and then-Judge Kavanaugh's dissent in *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 166–68 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) (en banc), the historical record regarding restrictions on the President's removal power does not support removal restrictions against an agency such as NCUA that wields substantial executive power.  Rather, at the time of the First Congress, "[t]he view that 'prevailed, as most consonant to the text of the Constitution' and 'to the requisite responsibility and harmony in the Executive Department,' was that the executive power included a power to oversee executive officers through removal." *Free Enterprise Fund*, 561 U.S. at 492 (quoting Letter from James Madison to Thomas Jefferson (June 30, 1789), 16 Documentary History of the First Federal Congress 893 (2004)).

That understanding "soon became the 'settled and well understood construction of the Constitution.'" *Id.* (quoting *Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 259 (1839)).

"[T]hat bedrock constitutional principle was challenged" only "in the late 1800s and the early 1900s" when Congress purported to create "new agencies that were independent of the President" and exercised combined powers. *PHH Corp.*, 881 F.3d at 169 (Kavanaugh, J., dissenting). And the constitutionality of insulating those agencies from the President's removal power was quickly "called into doubt by the Supreme Court in the 1926 *Myers* decision[.]" *Id.* "The *Myers* Court's articulation of the President's broad removal power appeared to mean that Congress could no longer create independent agencies," and "Congress itself read *Myers* that way." *Id.* While *Humphrey's Executor* resolved that dispute as to the 1935 FTC, then-Judge Kavanaugh's dissent demonstrates that it was not due to Executive Branch acquiescence to congressionally imposed removal, but rather a protracted give-and-take between the political branches that continues to the present. The dispute here is of a piece with that historical give-and-take, not a departure from it.

### C. If this Court finds removal restrictions, it should hold that those restrictions— not grants of executive authority to the NCUA—are unconstitutional.

Plaintiffs finally argue (Pls.' Reply at 17–19) that, if this Court holds unconstitutional the combination of the NCUA's executive power and the restrictions on the President's removal authority that Plaintiffs argue are implied in the statute, it should nevertheless leave those restrictions and grants of executive power in place. In support of that extraordinary proposition, Plaintiffs assert that "[t]here is no dispute that the NCUA Board can, consonant with the Constitution, carry out the core of its functions free from presidential interference." *Id.* at 18. On the contrary, that dispute lies at the very heart of this case.

Plaintiffs' position is that the unconstitutionally of the purported removal restrictions can be remedied by holding unconstitutional some of the NCUA's substantive statutory authorities, but this

Court should leave to future courts to decide which such authorities are unconstitutional.  *Id.* ("[A]ny marginally unconstitutional powers can be challenged if and when they are exercised, given that . . . private parties aggrieved by an official's exercise of executive power [may] challenge the official's authority to wield that power while insulated from removal by the President." (citation omitted)).  Delaying resolution of this matter to a future case at a future time benefits no one.  To the contrary, it would create a cloud of legal uncertainty over every action taken by the NCUA.  The Court should not defer on this issue and leave the NCUA and its activities vulnerable to legal challenge from Plaintiffs' reading of the agency's removal protections.  Precedent, traditional severability principles, and Congress's intent as embodied in the Federal Credit Union Act and its subsequent amendments foreclose their arguments.

*First*, the most analogous severability cases are *Free Enterprise Fund* and *Seila Law*.  In both, the Court severed the officers' removal protections but left intact the officers' authority to act.  *Free Enter. Fund*, 561 U.S. at 508–10, 513; *Seila Law*, 591 U.S. at 233-38.  Indeed, the Supreme Court directly rejected Plaintiffs' position in *Free Enterprise Fund*.  There, it declined to "blue-pencil a sufficient number of the Board's responsibilities so that its members would no longer be 'Officers of the United States," 561 U.S. at 509, noting that "such editorial freedom—far more extensive than" merely striking down the removal protections—"belongs to the Legislature, not the Judiciary."  *Id.* at 510.  And the Court has never taken a different approach in a removal case.  Lower courts have likewise concluded that, should there be a problem with removal protections, severing that provision would be the appropriate remedy rather than stripping the agency of the power to bring enforcement actions and adopt regulations to protect American consumers and workers.  *See FTC v. Kochava Inc.*, 2023 WL 3249809, at *12 (D. Idaho May 4, 2023); *FTC v. Walmart Inc.*, 664 F. Supp. 3d 808, 845 (N.D. Ill. 2023), *appeal docketed*, No. 24-3174 (7th Cir. Dec. 2, 2024).  Those authorities compel the same outcome here.

*Second*, traditional severability principles require that courts "limit the solution to the problem," and "refrain from invalidating more of the statute than is necessary." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625 (2020) (*AAPC*) (quoting *Free Enter. Fund*, 561 U.S. at 508, and *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (plurality)); *Walmart*, 664 F. Supp. 3d at 845. Here, the NCUA's executive power is not the problem; "[t]he real problem" would be "a potentially unconstitutional limit on the President's removal power." *Walmart*, 664 F. Supp. 3d at 845; *see also Free Enter. Fund*, 561 U.S. at 508-09; *Collins*, 594 U.S. at 258 n.23 ("[T]he unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office.").

Further, severing the purported removal provision would be the more precise, surgical solution to any separation-of-powers violation. Plaintiffs' preference for severing the NCUA's executive powers, scattered in various provisions of the Federal Credit Union Act—and doing so in hypothetical future lawsuits—makes no sense.

*Third*, Plaintiffs are incorrect (Pls.' Reply at 18) that Congress's supposed intention for the NCUA to be independent trumps Congress's intention to grant the NCUA substantial executive authority. To start, the Supreme Court rejected a similar argument in *Seila Law* when severing the CFPB Director's removal protections. The Court recognized that "Congress preferred an independent CFPB to a dependent one," but "the critical question [was] whether Congress would have preferred a dependent CFPB to *no agency at all*." 591 U.S. at 236. And it "seem[ed] clear" to the Court that the Congress would prefer a dependent CFPB, as the elimination of the CFPB would cause "major regulatory disruption" and "leave appreciable damage to Congress's work in the consumer-finance arena." *Id.* at 236–37. Here, similarly, eliminating the NCUA's enforcement authorities would cause major regulatory disruption and undermine the work that Congress has done over decades to ensure well-functioning financial markets and protect the millions of Americans who are members of

13

credit unions.  The suggestion that Congress would rather leave Americans unprotected than see Plaintiffs removed by the President is absurd.

### III.   Plaintiffs are not entitled to the relief sought.

#### A. This court may not reinstate plaintiffs to their former offices.

As Defendants explained, Article III courts may not order the reinstatement of a principal executive officer because such relief contravenes our nation's constitutional structure and exceeds the scope of federal courts' equitable powers.  Mem. of Law at 15–19.

**1.**  Plaintiffs first respond (Pls.' Reply at 19) that the *en banc* D.C. Circuit declined to stay orders reinstating members of the National Labor Relations Board ("NLRB") and Merit Systems Protection Board ("MSPB"), respectively in *Harris v. Bessent*, 2025 WL 1021435, at *1–2 (D.C. Cir. Apr. 7, 2025) (*en banc*).  But yesterday, the Supreme Court overrode the *en banc* D.C. Circuit and granted the government's application to stay the reinstatement orders.  *Trump v. Wilcox*, 2025 WL 1464804, at *1.  "The stay . . . reflects [the Supreme Court's] judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."  *Id.*  And in any event, the D.C. Circuit declined to engage meaningfully with the "district court's remedial overreach" in that now-vacated order.  *Harris v. Bessent*, 2025 WL 1021435, at *2 (Rao, J., dissenting); *see also id.* ("[T]he majority . . . should have explained why the government is not likely to prevail on its argument that the injunctions exceed the court's equitable authority.  Instead, the order devotes a single sentence to this question, likely because these remedies have no historical basis.").

**2.**  Plaintiffs next rehash (Pls.' Reply at 21) their account of *Swan*, 100 F.3d at 976–81, and *Severino*, 71 F.4th at 1042–43, as authorizing reinstatement.  Neither case supports that proposition.  To start, both decisions were issued at the motion-to-dismiss stage regarding Article III standing and did not grant any relief, much less reinstatement.  *See* Mem. of Law at 19 n.8.  And both cases acknowledged significant questions about what relief was available, including whether such relief

would meaningfully redress the injury. *See Swan*, 100 F.3d at 980–81 ("recognizing that the President

has the power, if he so chose, to undercut this relief"); *Severino*, 71 F.4th at 1042 (explaining the court

"need not confront that difficult question" of "whether an injunction ordering a presidential

appointment would be available or appropriate"). Accordingly, neither decision supports *ordering* the

relief sought here.[2]

3.    Plaintiffs maintain (Pls.' Reply at 21) that injunctive relief is proper "when the President

unlawfully dismisses a member of a multi-member board of an independent federal agency." But "a

court of equity will not, by injunction, restrain an executive officer from making a wrongful removal

of a subordinate appointee, nor restrain the appointment of another." *White v. Berry*, 171 U.S. 366,

377 (1898); *see* Mem. of Law at 15–19 (collecting authorities). Plaintiffs cite no contrary authority

from before this year in which the D.C. Circuit or Supreme Court reinstated a principal executive

officer.[3] The Supreme Court's longstanding precedent on the question of the specific type of

injunctive relief sought here—reinstatement—controls. *See White*, 171 U.S. at 377.

4.    Plaintiffs also fail to establish that history and tradition authorize reinstatement. To start,

Plaintiffs are simply wrong (Pls.' Reply at 22–24) that there exists no such rule establishing the

boundaries discussed above. To the contrary, "by the 1880s," the Supreme Court "considered it 'well

---

[2] In addition, Secretary Bessent exercises no authority over the operations of the NCUA or its Board and has no power to even facially remedy Plaintiffs' alleged injuries, a fact raised in Defendants' opening brief, Mem. of Law at 18 n.7, which Plaintiffs have not disputed.

[3] Plaintiffs note (Pls.' Reply at 20) that *Sampson v. Murray*, 415 U.S. 61, 71 (1974), acknowledged that "federal courts do have authority to review the claim of a discharged governmental employee[.]" But there is a critical difference between reviewing the claim of a discharged employee—in that case, a probationary employee in the Public Buildings Service of the General Services Administration—and issuing an injunction that reinstates a principal officer who controls an Executive Branch department's exercise of executive power. Only the latter places the judiciary on a collision course with the President's Article II appointment power. In any event, *Sampson* does not support the relief sought here as the Court reversed the grant of a preliminary injunction even in that disparate factual context. *Id.* at 92. *Vitarelli v. Seaton*, 359 U.S. 535 (1959), similarly addressed an Education and Training Specialist in the Department of the Interior, not a principal officer exercising executive power.

settled that a court of equity has no jurisdiction over the appointment and removal of public officers.'" *Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (mem.) (Gorsuch, J., dissenting) (citation omitted).

Plaintiffs then argue (Pls.' Reply at 23) that *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999), which held that a federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity," was limited to an injunction prohibiting the transfer of assets. But if the Court in that case concluded it was a "wrenching departure" from equitable practice merely to extend remedies of post-judgment creditors to pre-judgment creditors, *id.* at 322, then it necessarily follows that Plaintiffs here cannot transform a history of injunctions intended to prevent future legal violations to injunctions reinstating terminated principal executive officials. *See also Whole Woman's Health v. Jackson*, 595 U.S. 30, 43–45 (2021) (explaining "[t]he equitable powers of federal courts are limited by historical practice" in declining to adopt a "novel plan . . . [t]o expand the equitable powers of federal courts"). Plaintiffs cite nothing to support their claim that *Grupo Mexicano* should be limited to its facts, and D.C. Circuit precedent is to the contrary. *See Goodluck v. Biden*, 104 F.4th 920, 925 (D.C. Cir. 2024) ("courts considering an equitable remedy 'must ask' whether it 'was traditionally accorded by courts of equity'" (citation omitted)), *reh'g en banc denied*, 2024 WL 4092894 (D.C. Cir. Sept. 3, 2024). Accordingly, because courts of equity have not historically granted reinstatement of principal officers, this Court may not grant that remedy using its equitable injunctive powers, and Plaintiffs' observation that "[t]he rigid historic divide between law and equity has little relevance today," Pls.' Reply at 24, is inapposite.

Finally, Plaintiffs (Pls.' Reply at 24) attempt to minimize the import of the historical record from the First Congress, claiming that "three individuals cannot speak for the entire First Congress." But Plaintiffs identify no contrary views from that Congress, and the Supreme Court has instructed that those views are "entitled to great weight" in the removal context, *see Myers*, 272 U.S. at 122, and

for constitutional interpretation generally, *see Marsh v. Chambers*, 463 U.S. 783, 790 (1983). Plaintiffs are therefore not entitled to reinstatement by injunction.

### B. Plaintiffs are not entitled to a permanent injunction.

Independently, Plaintiffs are not entitled to a permanent injunction because they have failed to establish that they face irreparable injury and that the balance of the equities weighs in their favor. Mem. of Law at 19–24. As detailed below, their arguments to the contrary are unavailing.

1.  Plaintiffs insist (Pls.' Reply at 24) that they have suffered irreparable harm through "the deprivation of a 'statutory right' to serve as" officers. That reasoning is unsound. Although a public official's "loss of salary" amounts to a judicially cognizable harm, his "loss of political power" does not. *Raines v. Byrd*, 521 U.S. 811, 820–21 (1997); *see also Trump v. Wilcox*, 2025 WL 1464804, at *1. The notion that public officials "have a separate private right, akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting). Executive power belongs to the President, not to Plaintiffs.

*Sampson* is not to the contrary. Although *Sampson* contemplated "that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found," the Court made clear that "external factors common to most discharged employees" "will not support a finding of irreparable injury." 415 U.S. at 92 n.68. And as almost every executive branch official removed by the President could claim a right to serve in their prior position, injury to that asserted right does not amount to irreparable harm under the test put forth in *Sampson*. Indeed, for that reason, principal officers have historically sought to remedy their removal through suits for backpay, not for injunctions that would effectively reinstate them to their prior positions. *See* Mem. of Law at 16.

17

Plaintiffs also claim harm to the NCUA's ability to fulfill its mandate. But the NCUA continues to function with one Board member, as it has previously.[4] In any event, harm to the NCUA's ability to function would not irreparably harm *Plaintiffs*, and therefore cannot satisfy the irreparable harm requirement.[5] "Abstract harm" to third parties "does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021); *see also Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018). Contrary to Plaintiffs' assertion, Pls.' Reply at 25, they are not *personally* entitled to exercise executive power as NCUA Board members on behalf of a President who has chosen to remove them. That same principle forecloses Plaintiffs' attempt (Pls.' Reply at 25–26) to assert an injury to the Board's purportedly congressionally mandated independence and the NCUA. The only harm *to Plaintiffs* is a reparable loss of employment.

**2.** Regardless, the balance of equities and public interest significantly outweigh any minimal harm that Plaintiffs may suffer because an injunction would irreparably harm the Executive—and, indeed, the American people—by severing the link between the Executive Branch and the American people. Mem. of Law at 22–24. Indeed, the Supreme Court just yesterday explained that the equitable factors favor the government in this scenario. *See Trump v. Wilcox*, 2025 WL 1464804, at *1 ("The stay also reflects our judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."). An injunction would force the President to once again allow Plaintiffs to exercise executive power as principal officers, even though the President has

---

[4] *See* National Credit Union Administration, *Newsroom: NCUA Releases Staff Message on the Current NCUA Board* (Apr. 18, 2025), https://ncua.gov/newsroom/press-release/2025/ncua-releases-staff-message-current-ncua-board.
[5] The Supreme Court stayed the order reinstating Cathy Harris to her position on the MSPB in *Trump v. Wilcox*, 2025 WL 1464804, at *1 even though the MSPB lacked a quorum, so even if the NCUA did lack a quorum, the equities still would not favor relief.

removed them.  That unprecedented interference "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch."  *Dellinger v. Bessent*, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (quoting *Trump*, 603 U.S. at 608–09).  That "is a serious, concrete harm." *Harris v. Bessent*, 2025 WL 980278, at *19 (D.C. Cir. Mar. 28, 2025) (Walker, J., concurring), *vacated on reconsideration en banc*, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025).

Plaintiffs respond only that they are right on the merits, so the public interest favors entry of an injunction.  Pls.' Reply at 28.  As explained in Defendant's opening brief and herein, Plaintiffs are wrong on the merits.  And the relief Plaintiffs seek would compel the President to retain the services of principal officers whom the President no longer believes should be entrusted with the exercise of executive power.

Court orders reinstating fired executive officers create serious practical problems as well. Reinstatement orders can "lead to the utmost confusion in the management of executive affairs." *White*, 171 U.S. at 378.  In this way, leaving the President and Senate uncertain about whether and when they may install new officers to succeed Plaintiffs undermines "the steady administration of the laws" that Article II seeks to secure.  *Seila Law*, 591 U.S. at 223 (quoting The Federalist No. 70, at 471 (A. Hamilton) (J. Cooke ed. 1961)).

### C. Plaintiffs are not entitled to a declaratory judgment that would amount to reinstatement.

The equitable principles that preclude reinstatement also preclude declaratory relief—such as a declaration that the President's removal of Plaintiffs was void and without legal effect—that would achieve Plaintiffs' aim of reinstatement through other means.  Mem. of Law at 23–24.  Plaintiffs respond (Pls.' Reply at 28–29) that the availability of declaratory relief is subject to equitable limitations only with respect to ongoing state criminal prosecutions, to avoid a *res judicata* effect on state court proceedings akin to an injunction.  But the Supreme Court in *Samuels v. Mackell*, 401 U.S. 66, 70, 73 (1971), did not purport to limit the general principle that declaratory relief is subject to equitable

limitations to that narrow context, and the D.C. Circuit has subsequently recognized in both the removal context and other matters that the availability of a declaratory judgment is governed by equitable principles. *See Harris*, 2025 WL 980278, at *44 (Millett, J., dissenting) ("Declaratory relief is governed by 'the same equitable principles relevant to the propriety of an injunction.'" (citation omitted)); *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 696 (D.C. Cir. 2015) ("non-exclusive list of 'factors relevant to the propriety of granting a declaratory judgment'" include "whether other remedies are available," "the convenience of the parties," "the equity of the conduct of the declaratory judgment plaintiff" and "public importance of the question to be decided"). Accordingly, Plaintiffs may not obtain by declaratory judgment what they cannot obtain by injunction.

### D. Plaintiffs are not entitled to a writ of mandamus.

Nor have Plaintiffs established any entitlement to mandamus: they lack a clear right to relief, no defendant has a clear duty to act, there are other adequate remedies, and they have not established the existence of a ministerial duty. Mem. of Law at 23–24.

Plaintiffs respond (Pls.' Reply at 29) by citing dated authorities for the proposition that mandamus can be an available remedy for removal. But while the Supreme Court has approved the use of mandamus to try the title to judicial or local offices, Plaintiffs have identified no precedent for using mandamus to reinstate a principal executive officer removed by the President. *See Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 256 (1839) (court clerk); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 167 (1803) (justice of the peace in the District of Columbia); *see also Kalbfus v. Siddons*, 42 App. D.C. 310, 319 (D.C. Cir. 1914) (assistant assessor for the District of Columbia). Nor does there exist any support for the proposition that mandamus may issue against the President, which it must here as the President alone can appoint and remove Commissioners. Indeed, *Swan*, 100 F.3d at 978, acknowledged that the D.C. Circuit has "never attempted . . . to order the President to perform a ministerial duty."

In any event, the mere suggestion that mandamus *can* be an available remedy for unlawfully removed officials does not mean that Plaintiffs here are entitled to such relief.  Under current D.C. Circuit precedent, mandamus will "will issue 'only where the duty to be performed is ministerial'" and the right "clear and indisputable." *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (citation omitted).  Plaintiffs' right to relief is, at a minimum, unclear.  *See supra* pp. 1–14.  And the President's constitutional appointment authority is not ministerial.  *Cf. Marbury*, 5 U.S. (1 Cranch) at 151–52 (contrasting the power of appointment with the "ministerial" "requisites to be performed by the secretary" for delivery of the commission).

## CONCLUSION

For these reasons, the Court should grant Defendants' cross-motion for summary judgment, deny Plaintiffs' motions for summary judgment, and enter judgment in favor of Defendants.


Dated: May 23, 2025                              Respectfully submitted,


                                                 YAAKOV ROTH
                                                 *Acting Assistant Attorney General*

                                                 CHRISTOPHER R. HALL
                                                 *Assistant Branch Director*

                                                 /s/ *Elisabeth J. Neylan*
                                                 Elisabeth J. Neylan
                                                 N.Y. Bar Reg. Number 6125736
                                                 *Trial Attorney*
                                                 U.S. Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 1100 L Street, NW, Washington, DC 20530
                                                 Telephone: (202) 616-3519
                                                 Email: elisabeth.j.neylan@usdoj.gov

                                                 *Counsel for Defendants*