IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TODD M. HARPER and TANYA F. OTSUKA, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> SCOTT BESSENT, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-01294-AHA |

**DEFENDANTS' MOTION TO STAY THE COURT'S ORDER PENDING APPEAL**

Plaintiffs Todd M. Harper and Tanya F. Otsuka filed suit on April 28, 2025, ECF No. 1, challenging the President's decision to remove them as Board members of the National Credit Union Administration ("NCUA") earlier that month. The next day, Plaintiffs moved for a preliminary injunction and for judgment on the merits, seeking a declaration that their removal was unlawful and reinstatement to their former positions, ECF No. 3. The parties later agreed that cross-motions for summary judgment would present the most efficient resolution of the case, ECF No. 10. Following the completion of briefing and oral argument, the Court issued a memorandum opinion and order on July 22, 2025, granting Plaintiffs' motion for summary judgment and denying Defendants' cross-motion for summary judgment. ECF No. 28 ("Op."); ECF No. 29 ("Order"). Specifically, the Court: (1) declared that the terminations of Plaintiffs were unlawful, such that they remain members of the NCUA Board and may be removed only for cause; and (2) ordered Defendants Scott Bessent, Larry

1

Fazio, Kyle S. Hauptman, and Trent Morse, as well as their subordinates, agents, and employees, enjoined from removing Plaintiffs without cause or "in any way treating Harper and Otsuka as having been removed from office[.]" Order at 1.

This relief constitutes an extraordinary intrusion into the President's authority. Accordingly, Defendants appealed the Court's order on July 22, 2025, *see* Notice of Appeal, ECF No. 30, and Defendants now respectfully move the Court to stay its order pending appeal.

"[T]he factors regulating the issuance of a stay are . . . (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

These factors weigh decisively in favor of a stay, as demonstrated by the Supreme Court's decision to stay two district court orders that, like this one, immediately reinstated principal executive officers. Specifically, on May 22, 2025, the Supreme Court granted a stay of orders from other courts in this district enjoining the President's removal of a member of the National Labor Relations Board ("NLRB") and a member of the Merit Systems Protection Board ("MSPB"). *See Trump v. Wilcox*, No. 24A966, 605 U.S. ____ (2025) ("*Wilcox* Stay Order"). Similarly, on July 3, the D.C. Circuit granted a stay pending appeal of an order from another court in this district enjoining the President's removal of a member of the Federal Labor Relations Authority ("FLRA"). *See Grundmann v. Trump*, No. 25-5165 ("*Grundmann* Stay Order"). On July 1, 2025, the D.C. Circuit likewise granted a stay pending appeal of a second order from another court in this district enjoining the President's removal of two members of the Privacy and Civil Liberties Oversight Board ("PCLOB"), another executive branch agency without statutory removal protections. *LeBlanc v. United States Priv. & C.L. Oversight Bd.*, 2025 WL 1840591, at *1 (D.C. Cir. July 1, 2025). The Supreme Court and D.C. Circuit decisions in granting

stays compel the same result here.

As to the first stay factor, Defendants have made a strong showing that they are likely to succeed on the merits. First, the Supreme Court and the D.C. Circuit have repeatedly emphasized that absent a "specific provision to the contrary, the power of removal from office is incident to the power of appointment." *Carlucci v. Doe*, 488 U.S. 93, 99 (1988) (quoting *Keim v. United States*, 177 U.S. 290, 293 (1900)); *Severino v. Biden*, 71 F.4th 1038, 1043-44 (D.C. Cir. 2023); *LeBlanc*, 2025 WL 1840591, at *1; *see also Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2448 (2025) ("Braidwood invites the Court to read a for-cause removal restriction into a statute that does not explicitly provide for one. We decline to do so. The Court has said that to 'take away' the power of at-will removal from an appointing officer, Congress must use 'very clear and explicit language.'").

Here, this Court correctly concluded that "it is undisputed that the NCUA statute does not contain a provision that expressly limits the President's ability to remove the agency's Board members." Op. at 6. The NCUA statute therefore does not, as it must, contain "plain language to take . . . away" the President's removal authority over executive branch officers like Plaintiffs. *Shurtleff v. United States*, 189 U.S. 311, 316 (1903); *see also LeBlanc*, 2025 WL 1840591, at *1 (concluding that the Government was likely to succeed on the merits in part because "PCLOB's organic statute contains no language restricting the President's removal power").

This Court acknowledged the Supreme Court's *Braidwood* opinion but then stated that the absence of an express provision should not be treated as dispositive, Op. at 6, and concluded that the "text and history of the NCUA statute, along with the structure and function of the NCUA Board, confirm Congress restricted the President's power to remove Board members." Op. at 14. For the reasons explained in briefing and at argument, *see* ECF No. 11-1 at 6–15; ECF No. 15 at 3–4, and reiterated by the D.C. Circuit's stay order in *LeBlanc*, 2025 WL 1840591, at *1, the Government respectfully disagrees with the Court's analysis. For that statutory reason alone—that neither the

3

statutory text nor the agency's structure confers protection from removal—the Government is likely to succeed on appeal. *See LeBlanc*, 2025 WL 1840591, at *1.

Second, the Government respectfully submits that this Court erred in holding that the NCUA Board "does not exercise any more significant executive power than the 1935 FTC as characterized by the *Humphrey's* Court." Op. at 17. As explained in briefing and at argument, the NCUA exercises considerably more executive power than the 1935 FTC, including the power to seek daunting monetary penalties against credit unions and affiliated individuals. *See* ECF No. 11-1 at 12–15; ECF No. 15 at 5–10. Because the NCUA exercises considerable executive power, the Supreme Court's logic in staying the reinstatement orders in *Trump v. Wilcox*, 605 U.S. ____ (2025) based on its judgment that "the Government [wa]s likely to show that both the NLRB and MSPB exercise considerable executive power," compels the same result here. Accordingly, Defendants have made a strong showing that they are likely to succeed on the merits.

In any event, as shown above, *Wilcox* and the D.C. Circuit's stays in *Grundmann* and *LeBlanc* reinforce that Defendants can show a strong likelihood of success on appeal, *Hilton*, 481 U.S. at 776, even if this Court was not persuaded that it should enter summary judgment for Defendants in light of *Collins v. Yellen*, 594 U.S. 220 (2021) and *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020).

What is more, under the remaining stay factors, Defendants will be irreparably harmed absent a stay, and the balance of the equities and public interest overwhelmingly favor a stay pending appeal. *See Wilcox* Stay Order at 1. Again, the Supreme Court explained in *Wilcox* that its "stay reflects our judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox* Stay Order at 1; *see also Grundmann* Stay Order at 2 ("The Supreme Court's reasoning [in *Wilcox*] fully applies to the FLRA, which possesses powers substantially

similar to those of the NLRB."). And the D.C. Circuit has further explained in precisely this context that "[i]njunctions that require the President to work with removed principal officers interfere with his constitutional power to supervise the Executive Branch." *LeBlanc*, 2025 WL 1840591, at *2.

That same analysis controls here, as a "district court should not disregard the strong pronouncements of the Supreme Court." *Newdow v. Bush*, 391 F. Supp. 2d 95, 107 (D.D.C. 2005). And even if this Court disagrees that *Wilcox* supports Defendants' argument on the merits at summary judgment, there is no basis for distinguishing the Supreme Court's assessment of the equities in the *Wilcox* Stay Order from those at play here: this Court's order is substantively identical to the orders that were stayed in *Wilcox* (and by the D.C. Circuit in *Grundmann* and *LeBlanc*) and thus effects the same harm on the Executive Branch.

For these reasons, the Court should grant a stay of its order pending resolution of Defendants' appeal.

Dated: July 22, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
*Civil Division*

CHRISTOPHER R. HALL
*Assistant Branch Director*

/s/ *Elisabeth J. Neylan*
Elisabeth J. Neylan
N.Y. Bar Reg. Number 6125736
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 616-3519
Email: elisabeth.j.neylan@usdoj.gov

*Counsel for Defendants*